## Case No. 13,661.
### SWAIN v. HOWLAND.
[1 Spr. 424.] [1]

District Court, D. Massachusetts. June, 1858.

SEAMEN—FORFEITURE OF WAGES—DESERTION—JUDICIAL DISCRETION.

By the general maritime law, desertion by a seaman is not necessarily a forfeiture of all antecedent wages, and all goods on board, but the court has the power to mitigate the forfeiture according to circumstances.

[Cited in The Quintero, Case No. 11,517; The Balize, Id. 809.]

In admiralty.

A. Mackie and A. S. Cushman, for libellant

L. F. Brigham and J. C. Stone, for respondent.

SPRAGUE, District Judge. This is a libel by a father for the share, or lay, of his minor son in a whaling voyage. The son shipped at a lay of $1/170$, in 1850, being nearly 17 years of age, and the vessel sailed from New Bedford in June of that year. The father afterwards expressed his approbation of what had been done. The son continued on board, and in the performance of his duty, until September, 1853, when he deserted, at a port on the coast of the Pacific. The ship had then ceased cruising for whales, and she returned from that port directly home, where she arrived in January following, with a large quantity of oil. The only defence to this suit is the desertion of the minor. No statute desertion is proved, or even alleged, but it is insisted that, by the general maritime law, all the earnings of the son are absolutely forfeited. There is no question that the libellant was entitled to the services of this minor son, and might recover either their value to him, or the stipulated compensation, if the voyage had been fully performed. The objection to the claim rests wholly upon the desertion. Some stress was laid in the argument upon the suit's not being by the seaman himself, and also

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

upon the fact that the deserter was a minor; but I do not choose to rest my decision upon those circumstances, because I am of opinion that, if this lad had been of full age when he shipped, and were now the libellant, it would not be imperative upon the court to deprive him of all compensation. A desertion, under the general maritime law, is not an absolute forfeiture of all antecedent wages and goods on board, but the court has the power to mitigate it, according to the circumstances of the case; and I rejoice, for the sake of justice and humanity, that such a power exists. I am aware that much is said in the books to countenance a different doctrine, founded upon the early maritime codes and usages. Lord Mansfield said, in the king's bench: "We do not sit here to take our rules of evidence from Siderfin or Keble." And I think maritime courts, at the present day, may well decline being absolutely controlled by the practice or opinions of a remote and rude age, when voyages were short and navigation was in its infancy, and which cannot be applied to the navigation and business of the present day, without gross injustice. Suppose that, in the Middle Ages. the state of commerce. the relation of the seamen to the voyage, and the danger from enemies and pirates were such that it was deemed proper, in the imperfect light of the dawn of commercial jurisprudence, to inflict, as a peremptory mulct upon seamen, the loss of all wages then due, and all their goods on board of the vessel. does it follow that we are to apply the same doctrine to the whale fishery as it now exists, a business which did not then enter into the imagination of man, and in which the voyages are extended often to four. and sometimes to five years and upwards? The case now before the court is a sufficient illustration of the wrong that may be worked by the doctrine of absolute forfeiture. This young man served faithfully for three years and four months, in a laborious and dangerous occupation. The circumstances under which he left that service do not appear, nor that the master made any endeavor to procure his return. It is not proved, or even alleged. that his desertion caused any loss or damage to the owners; on the contrary, it is not unreasonable to presume that it was a benefit. A greater number of men is required in taking oil than for navigating the ship, and as, after he left, she was only to make her homeward passage, the rest of the crew was probably more than sufficient for sailing her, and the owners were saved the expense of his board. Yet, if the forfeiture be absolute. he is cut off from any share in the proceeds of the voyage, that is. deprived of all the earnings that are due to him for more than three years' hard and hazardous service. There may be cases in which there has been a course of ill treatment. on the part of the officers or some of the crew, or infirmity of body or of mind.

or apprehension, or error, which falls short of a complete justification of desertion, and yet comes near to it, and presents strong grounds for its extenuation, especially where little or no damage has accrued to the owners. Now to apply an iron rule of forfeiture of all antecedent earnings, and all goods on board, without regard to their amount, or to the degree of delinquency in the deserter, or of injury to the owners, is at war with the whole spirit of our jurisprudence. Scarcely another instance of forfeiture or penalty can be named, in which there is not somewhere lodged a power of dispensation or mitigation. In covenants with a forfeiture for non-performance, the forfeiture is enforced only to the extent of the damage. Penal bonds are chancered by the court; forfeitures under the revenue laws may be remitted by the secretary of the treasury, under certain restrictions; and even the penalties and punishment of crimes of every grade may be remitted by the pardoning power of the executive. Why should the law of forfeiture be blindly inexorable against seamen alone. and that, too, for an offence often venial, committed from thoughtlessness, or rashness, in a moment of irritation or temptation. Its injustice is palpable. It is at least of doubtful policy. Desertion is often the effect of a sudden impulse from real or supposed wrong, or the temptations or allurements of the shore, after being long subjected to confinement, privations and hardship at sea. The hope of obtaining compensation for past services would be an inducement to return to this country. Ought it to be wholly cut off by an absolute forfeiture?

Seamen. in general, have little confidence in the justice of those whom circumstances have placed above them. and there is too much ground for this feeling. If a seaman is wronged by a subordinate officer, and makes complaint to the master, it too often happens that he not only can obtain no hearing or redress, but brings upon himself further and greater ill treatment; and an appeal to an American consul against a master is oftentimes no more successful. pre-occupied. as that officer is likely to be, by the representations and influence of the master. Upon his return home, he finds those whom he has served, the owners of the ship, generally take part, at once. with the officer, in every controversy with the seamen, and not unfrequently exerting themselves to intercept that justice which the law would give him. And if to all this be added peculiar severity, even by the law of his country, in subjecting him alone to a forfeiture which cannot be remitted. or even mitigated, he may well be excused for feeling little confidence in the justice of superior powers. This feeling enters into his character. adds to his recklessness, weakens the ties that bind him to his country, and tends to make him a vagrant citizen of the world. The doc-

trine that the court is not, by the maritime law, bound to decree a forfeiture of all antecedent earnings, is not new in this court. I have held it in several former cases, two of which have been reported. Lovrein v. Thompson [Case No. 8,557]; Gladding v. Constant [Id. 5,468]. I am glad to find it sustained by the authority of Judge Ware. Gifford v. Kollock [Id. 5,409].

Judge Story, in Coffin v. Jenkins [Case No. 2,948], at first lays down the doctrine that desertion is, by the maritime law, an absolute forfeiture, but he afterwards qualifies this by saying that, in case of severity by the officers and ill treatment of the seamen, or of an offer to return to duty, the forfeiture may be mitigated. It is true, that he seems to confine this amelioration of the doctrine to the cases specified, or others similar thereto, but it is apparent that the same principle which makes the rule to recede before those circumstances, must make it yield to others equally cogent; that is, it establishes a power of mitigation, to be exercised by the court according to its judicial discretion. It is to be observed that he uses the word mitigated, showing that he had reference not to cases of justification, which excludes all forfeiture, but of extenuation which may render it partial, instead of total.

I have no occasion to consider any statute desertion, either under the act of 1790 [1 Stat. 131], or the recent act of 1856, c. 127, § 25 [11 Stat. 62], which has been passed since this voyage was completed.

The cause must be sent to an assessor, to ascertain and report what were the proceeds of the voyage, and the advances to the libellant, or for his benefit, and the court will then determine the amount for which a decree shall be rendered. The Mentor [Case No. 9,427].

NOTE. See The Martha [Case No. 9,144], that desertion, by the maritime law, is "to be punished by a simple mulct or abstraction of wages, at the discretion of the court." See, also, Coffin v. Shaw [Id. 2,952]. That the statute does not supersede the general doctrine of the maritime law, or repeal it, see Cloutman v. Tunison [Id. 2,907]; Coffin v. Jenkins [Id. 2,948]; Burton v. Salter [Id. 2,218]; The Rovena [Id. 12,090]; The Cadmus [Id. 2,282]; The Union [Id. 14,348]; The Osceola [Id. 10,602].